| | | |
|---|---|---|
| UNITED STATES DISTRICT COURT<br>EASTERN DISTRICT OF NEW YORK<br>------------------------------------------------------- X<br>:<br>:<br>IN RE PROPECIA (FINASTERIDE)　　　　　　:<br>PRODUCT LIABILITY LITIGATION　　　　　　　:<br>:<br>:<br>------------------------------------------------------- X<br>:<br>THIS DOCUMENT APPLIES TO:　　　　　　　　:<br>:<br>J L HOWZE,　　　　　　　　　　　　　　　　:<br>　　　　　　　　　　Plaintiff,　　　　　　　　　:<br>:<br>　　　　-against-　　　　　　　　　　　　　　　:<br>:<br>JOHN CANAN and MERCK SHARP AND　　　:<br>DOHME,　　　　　　　　　　　　　　　　　　:<br>:<br>　　　　　　　　　　Defendants.　　　　　　　　:<br>:<br>------------------------------------------------------- X | **C/M**<br><br><br>12-MD-2331 (BMC) (PK)<br><br><br><br><br><br>**MEMORANDUM DECISION<br>AND ORDER**<br><br><br>14-cv-0297 (BMC) (PK) |

**COGAN**, District Judge.

　　This *pro se* products liability action is one of the few cases remaining in a consolidated multi-district litigation that at one time comprised over 700 cases. The actions allege that a popular drug called Propecia that is used primarily to treat male pattern hair loss and benign prostatic hyperplasia (BPH), manufactured by defendant Merck, causes a number of sexual side effects, and that there were inadequate warnings as to those side effects. Plaintiff J. L. Howze, who has been an inmate in a California state prison throughout this case, brought the case in the Central District of California, from which it was transferred to this Court and consolidated with the other cases pursuant to an Order of the Judicial Panel on Multidistrict Litigation.[1]  Plaintiff

---

[1] A review of PACER reveals that plaintiff has filed at least 15 lawsuits in federal court over the last ten-plus years.

alleges that he took Propecia to treat his BPH and suffered some of the sexual side effects that have been commonly alleged in these actions.

Under either California, New Jersey, or New York law (and indeed the law of most if not every jurisdiction), a products liability plaintiff must prove causation as an element of his claim. See Rutherford v. Owens-Illinois, Inc., 16 Cal. 4th 953, 968, 941 P.2d 1203, 1214 (1997); James v. Bessemer Processing Co., 155 N.J. 279, 299, 714 A.2d 898, 908 (1998); Hamilton v. Beretta U.S.A. Corp., 96 N.Y.2d 222, 240, 72 N.Y.S.2d 7, 19 (2001). When the product at issue is a complex product like a pharmaceutical, the plaintiff generally must come forward with expert testimony to show that the conditions from which he suffers were in fact caused by the product in question. Sclafani v. Air & Liquid Sys. Corp., 14 F. Supp. 3d 1351, 1355 (C.D. Cal. 2014); Sholtis v. Am. Cyanamid Co., 238 N.J. Super. 8, 31, 568 A.2d 1196, 1208 (App. Div. 1989); In re Mirena IUS Levonorgestrel-Related Prod. Liab. Litig. (No. II), 387 F. Supp. 3d 323, 341 (S.D.N.Y. 2019), aff'd, 982 F.3d 113 (2d Cir. 2020). This showing requires the plaintiff to demonstrate both that the drug in question is capable of causing the condition from which he claims he suffers (general causation) and that his condition was in fact caused by that drug (specific causation). See In re Viagra (Sildenafil Citrate) & Cialis (Tadalafil) Prod. Liab. Litig., 424 F. Supp. 3d 781, 792-93 (N.D. Cal. 2020); In re Johnson & Johnson Talcum Powder Prod. Mktg., Sales Pracs. & Prod. Litig., No. CV 16-2738, 2020 WL 8968851, at *25 (D.N.J. Apr. 27, 2020); In re Mirena IUD Prod. Liab. Litig., 202 F. Supp. 3d 304, 311-14 (S.D.N.Y. 2016), aff'd, 713 F. App'x 11 (2d Cir. 2017). State law has imposed this requirement because a jury cannot be allowed to speculate as to a chain of causation that turns on the complex interaction between biological processes and the drug in question. See In re Mirena, 202 F. Supp. 3d at 311; see also In re Lipitor (Atorvastatin Calcium) Mktg., Sales Pracs. & Prod. Liab. Litig., 227 F. Supp. 3d

452, 469-77 (D.S.C. 2017) (collecting cases), aff'd sub nom. In re Lipitor (Atorvastatin Calcium) Mktg., Sales Pracs. & Prod. Liab. Litig. (No II) MDL 2502, 892 F.3d 624 (4th Cir. 2018).

Merck has vigorously contested specific and general causation in all of these member cases. Throughout this particular case, Merck and the Magistrate Judge have given plaintiff multiple opportunities, specifically indulging his *pro se* status, to designate an expert that plaintiff would use at trial so that Merck could obtain discovery from that expert and challenge whatever theory of causation plaintiff might put forward. He was ordered to serve general causation expert reports by October 15, 2019, and case-specific expert reports by November 15, 2019, but did not meet those deadlines. Instead, he made serial motions for the appointment of counsel and an expert witness, all of which the Magistrate Judge denied. On May 15, 2020, the Magistrate Judge held a status conference and extended plaintiff's time to disclose an expert to August 17, 2020. He failed to do so, again moving for reconsideration of the orders denying him appointment of counsel and experts, which the Magistrate Judge again denied. Plaintiff appealed at least two of her rulings denying appointment of counsel and experts to me, and I affirmed those rulings for reasons that I set forth.

Plaintiff advised by notice dated August 14, 2020 that he was unable to secure an expert. Defendants have therefore moved for summary judgment, relying principally on the failure to comply with court orders, and arguing that plaintiff cannot make out a *prima facie* case of products liability without expert testimony under applicable law. Plaintiff has responded to the motion, arguing that expert testimony should not be required and that he should be able to rely on his own testimony to prove general and specific causation.

I recognize the difficulty faced by a *pro se* litigant seeking to bring a complex products liability case like this one. Since contingency fees for experts are generally not allowed, see,

3

e.g., Perfect 10, Inc. v. Giganews, Inc., No. CV 11-07098, 2014 WL 10894452, at *4 (C.D. Cal. Oct. 31, 2014); J & J Snack Foods, Corp. v. Earthgrains Co., 220 F. Supp. 2d 358, 368 n.8 (D.N.J. 2002), not only must a *pro se* plaintiff find an expert, but he must find a way to pay him up front. When a plaintiff is represented, counsel generally advances the costs of retaining experts, subject to recovering those costs out of any verdict or settlement.

However, as the 700-plus cases in this MDL illustrate, virtually all of which have had counseled plaintiffs, there is no shortage of plaintiffs' attorneys willing to take on high profile products liability actions like this one on a contingent fee basis. Those attorneys are in the business of evaluating the costs and risks of litigation, including advancing expert fees. They are generally not hesitant to take on plaintiffs as clients who are incarcerated, as I have had other products liability and personal injury cases brought on behalf of prisoners. Thus, if plaintiff has been unable to obtain an attorney, it may be because the market for legal services has reached a conclusion that the value of his case is insufficient to warrant an attorney's investment of time and money.

More importantly, although plaintiff's *pro se* status should be reasonably indulged, it does not change the substantive law. Expert testimony is required to put a case like this to a jury, and for good reason. I cannot have plaintiff simply tell the jury that he took Propecia and suffered side effects, and then have the jury reach its own non-scientific conclusion that the former caused the latter.

Accordingly, defendants' motion for summary judgment is granted. The Clerk is directed to enter judgment, dismissing the case. The Court certifies pursuant to 28 U.S.C. § 1915(a)(3)

that any appeal from this Order would not be taken in good faith and therefore *in forma pauperis* status is denied for purposes of an appeal. See Coppedge v. United States, 369 U.S. 438 (1962).

**SO ORDERED.**

Digitally signed by Brian M. Cogan
_____
U.S.D.J.

Dated: Brooklyn, New York
      May 10, 2021